GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

*Minutes of Superior Court, letter G. p. 3.*

The STATE *vs.* ASSELIN.

### HABEAS CORPUS.

By *Charlton*, Judge.

THE prisoner has been arrested and committed by virtue of the following warrant :

" *State of Georgia—Chatham County.*
" To any lawful constable of said county :

" You are hereby commanded to take the body of *Charles Asselin*, and bring him before me, or any justice of the peace of said county, to answer to a charge exhibited against him by *Lewis Mallet*, for enveigling and feloniously carrying off the following named negroes, which the deponent was legally possessed of, to wit: *Sophia*, and her son, a child ; *Benjamin*, *Delphine*, and her son ; *Muttpuin*, *Dublin*, *Antonia;* in all eight negroes, and one horse, and bring him and the said negroes and horse, if found, before me or any other justice of the peace of said county ; and this shall be your warrant. Given under my hand and seal, the 27th day of July, 1808.

"JOHN POOLER, J. S. C."

This is the language and form of the warrant, and the affidavit of *Mallet*, upon which the warrant is founded, states the commission of the felony in the most positive and unequivocal terms.

The prisoner is now brought up by habeas corpus, and his counsel move for *his discharge*, upon the exhibition of evidence, written and parol, which they contend clearly show that no felony had been committed, and that this prosecution is a mere dispute about the right of property.

It appears from the evidence adduced by the prisoner,

that he took possession of the negroes named in the warrant, in pursuance of a letter of attorney from one *Monet*, an inhabitant of the island of *Cuba*, who is admitted, on all sides, to be the legal owner.    This letter of attorney is dated at the *Isle* of *Cuba*, 13th May, 1808.

GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

The prosecutor, *Mallet*, claims a right to retain the possession, and to exercise a qualified property over these negroes, by virtue of an authority given to him for that purpose, by Madame *Monet*, the wife of the proprietor, *Monet*, who had delegated to his wife, in a letter of attorney, dated the 8th day of October, 1806, a full power to sell or otherwise to dispose of them for his advantage.    It was in evidence that when Mrs. *Monet* left this state two years ago, she deposited in the hands of her brother, *Lewis Mallet*, a blank power of attorney, to which she affixed her seal and name, in the presence of a witness, *P. Dupon*.    This letter of attorney transfers to her brother all the rights relative to these negroes, which she had derived from her husband, *Monet*, but was filled up not longer than six weeks ago, and is dated the 30th July, 1807.

Farther evidence was offered to prove that *Mallet* had full notice of the authority given by *Monet* to the prisoner, Mr. *Asselin*, and, consequently, of the revocation of Madame *Monet's* authority.

It is unnecessary to dwell on the exchange of these negroes with *Charles Debrosse*, as by the deed of the 7th of July, they were re-possessed by the agent or attorney of *Monet*.

This, in substance, was the nature of the testimony adduced to repel, and to controvert the round charges of felony stated in the affidavit of *Mallet*, and the warrant of the magistrate.

The felony charged is of a capital nature, and against my *then* conviction, I (*in favorem vitæ*) permitted this extraneous investigation, urged at the same time by the prisoner's counsel, who felt no doubts as to the admissibility of this kind of testimony, on the return of a habeas corpus.

24

GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

*Mitchell* and *Bulloch*, the prisoner's counsel, contended, that not only the general doctrines of the law, but universal practice authorised an examination of all the *circumstances* of the case, as well on the part of the republic, as on the part of the prisoner; that this examination was not confined by the principles of law to the depositions taken before the magistrate, but might be legitimately extended to every and all kinds of evidence, which could be produced on *either side,* to show that a felony *had* or *had not* been committed. And under this impression of the law, they moved for a discharge of the prisoner *Asselin*, because it did appear, from the evidence submitted to the court, that instead of a felony having been committed, this prosecution was founded upon the grossest malice, and every bad propensity of the human heart.

These positions having been asserted with much confidence, by my brother *Bulloch*, I hesitated in giving an immediate opinion from that respect which is due to his professional abilities.

A few hours' reflection, however, have not produced an evolution, in the general opinion which I gave yesterday. Whatever sentiments I may entertain of this prosecution, or of the character of Mr. *Asselin*, I feel my conscience and my judgment encompassed by obligations, which I shall faithfully discharge, without permitting my passions to be warped by circumstances which are connected with the relative situation of men in society. I must decide upon the principles of law; and when my mind is irresistibly convinced of their applicability to a particular case, I am not at liberty, in order to come at a purer system of justice, to consult my discretion, or my feelings.

I am tied down by precedents where they do not militate with the constitution or the law. It is the glory of our people, that their rights are dependent upon fixed principles, and those fixed principles are contained in the fundamental provisions of the constitution; in the adjudication of our courts; in the precedents established by our ancestors. The impe-

rial *legibus solutus* is established so soon as a judge sets up his opinion against an uniform current of authorities, which have been stamped with the seal of wisdom, and acquiesced in by the people. The plain and upright *Grose* once said, that it was better for the subject, that even faulty precedents should not be shaken, than that the law should be uncertain. 2 Term Rep. 24.

GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

In this sentiment I concur, and will now proceed to show, upon the authority of precedents, 1st, That it is not competent for the prisoner, on the return of the habeas corpus, to go into a *full defence* of his case, for the purpose of establishing his innocency, or of controverting the facts stated in the depositions of state witnesses; and 2d, I will laconically state the reasons upon which is founded the necessity of an *ex parte* investigation, on a motion to bail or to discharge the prisoner.

1. The first case I will cite, is that of the King *vs.* Horner. Leach, Cr. Law, 226. It is there said, that the practice of this court is, and upon a reference to the officers of the crown office, we find it to have been long established, that even when the commitment is regular, the court will look into the depositions to see if there is sufficient ground laid to detain the prisoner in custody; and if there is not, they will bail him.

So also when the commitment is irregular, if it appear that a serious offence has been committed, this court will not discharge or bail the prisoner, without first looking into the depositions, to see whether there is sufficient evidence to detain him in custody.

What depositions are here alluded to? Any depositions which may be offered on the part of the prosecution, or by the prisoner and his witnesses?

Certainly only the former.

The stat. 1 and 2 P. and M. and 2 and 3 P. and M. order, that justices of the peace, when any prisoner is brought before them, on a charge of felony, *shall* take the examination of the said prisoner and the information of them that bring

GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

him, of the fact and circumstances thereof, as may be necessary to prove the felony, shall be put into writing two days after the examination, and certified to the next general jail delivery.

No prisoner brought before a magistrate is sworn to his examination. 1 M'Nally on Ev. 47. Nor are any depositions taken by the magistrate, other than those of the persons charging the prisoner with the felony. What other depositions can then be exhibited on the return of an habeas corpus, requiring the cause of the caption and detention of the prisoner, than the depositions of the persons informing him? No others can be exhibited in aid of the warrant. I am therefore irresistibly compelled to say, that the depositions spoken of in *Horner's* case, are those taken conformably to the statutes of *Philip* and *Mary;* the depositions of the persons bringing the prisoner before the magistrate. By no *data* presented to my mind, can I for a moment suppose, that this case refers to all depositions which may be produced, as well by the public officer as the prisoner himself; because, in pursuance of the requisitions of the stat. of *Philip* and *Mary*, no other depositions than those of the informers can be exhibited to the court on the return of the habeas corpus.

This case was determined in the 23d of George 3.

The next case is anterior in point of date, 13th George 2, and it is as conclusive on this doctrine, as can be conveyed in the *English* language: I will state in the words of the reporter.

"Dominus Rex *vs.* Greenwood. He came up on a habeas corpus, charged with a commitment for a robbery on the highway, and the *prosecutor* attending, said he was the man; and though eight affidavits of credible persons, proving him to have been at another place at the time the robbery was sworn to, were read, yet the court refused to admit him to bail, but ordered him to remain until the assizes." 2 Strange, 1138.

Here then was evidence brought forward by the prisoner which proved an *alibi*, yet the court would not depart from

the fundamental principles of the law, which, at this stage of, the prosecution, confines the investigation to the *ex parte* depositions of the crown or state witnesses.

Upon the authority of these cases, and the reasoning I have attempted to connect with them, it results, that no evidence extraneous to the depositions and informations taken by the magistrate, ought to be admitted to controvert the facts contained in these depositions, or the charge exhibited in the warrant of commitment. These cases are fortified too by another principle of law, that no one can, in any case, controvert the truth of the return to a habeas corpus, or plead or suggest any matter repugnant to it. 2 Hawk. P. C. 113. Bac. Abr. 1 vol. p. 226. note.

2. I will now state the reasons which induce the necessity for the adoption of the principles and doctrines advanced.

The first reason is, that if the court undertakes to decide from evidence *dehors*, that which is certified by the magistrate, it consequently goes into a plenary hearing of the merits of the case, and *per obliquum* decides on the innocency or guilt of the accused. It consolidates the facts with the law, against the maxim *de facto juratores, de lege judices respondent*, and against the law and the constitution, which place an ultimate condemnation and acquittal in the hands of a jury. Is there a greater hardship in refusing a full statement of the evidence on both sides before the court, at this incipient stage of the prosecution, than in that other stage of it, when the accusation is delivered to the grand inquest, in the solemn form of an indictment, in which the whole republic complains of an injury to its peace, its government, and dignity ? And yet the investigation before the grand jury is *ex parte*.

Another reason is, that if evidence on both sides is admitted at this stage of the prosecution, the court must weigh the credibility of the witnesses, which is the peculiar *province* of the jury. Cases may occur, in which honest men may be emporarily the victims of perjury and malice; but virtue

GEORGIA,
Liberty Co.
Nov. 1808.

State
vs.
Asselin.

and integrity cannot long suffer under the benignant reign of our laws. Is the citizen or the man illegally arrested ? The indictment and the action for false imprisonment afford an ample redress. Is the citizen prosecuted without cause, with fraud and malice ? he finds a reparation in the action of malicious prosecution. Is he falsely charged ? The degrading and everlasting punishment of perjury atones for the outrage on his reputation and honour.

At the same time then, that I feel myself obliged to obey the stubborn principles of law, in opposition perhaps to what abstract principles of justice may suggest, it ought to be a consolation to the persons who must submit to this opinion ; that for every injury the law affords a co-extensive remedy.

Though I cannot receive this evidence on a motion to discharge the prisoner, yet I am not precluded by any principle of law from permitting it to regulate the bail which I conceive it proper to require.

It is therefore ordered, that the prisoner be bailed in the sum of five hundred dollars, and two securities in the sum of two hundred dollars each, to appear at the next court, to answer to a bill of indictment, for the felony charged; and that security in similar sums, to prosecute, be given by *Lewis Mallet.*

*Noel* and *Stites*, for the prosecution.

*Mitchell* and *Bulloch*, for the prisoner.